**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0094-WJM-CBS

LISA DORSEY, individually and on behalf of a minor J.D.,

      Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60,
BOARD OF EDUCATION OF PUEBLO SCHOOL DISTRICT SIXTY,
CORWIN INTERNATIONAL MAGNET SCHOOL, and
JOHN DOE, INDIVIDUALLY AND IN OFFICIAL CAPACITY AS PUEBLO SCHOOL
DISTRICT TEACHER,

      Defendants.

---

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

---

Plaintiff Lisa Dorsey, on behalf of her minor daughter, J.D., ("Plaintiff") brings this action against Defendants Pueblo School District 60, Board of Education of Pueblo School District 60, Corwin International Magnet School ("Corwin"), and John Doe, an unknown Pueblo School District teacher.  (ECF No. 30.)  Plaintiff sues Defendants for their negligence, and brings further claims under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. §§ 701 *et seq*., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and 42 U.S.C. § 1983.  (*Id*.)  This matter is currently before the Court on Defendants Pueblo School District 60, Board of Education of Pueblo School District 60, and Corwin's (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint ("Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 33.)  Plaintiff responded to the Motion on June 1,

2015, and Defendants filed their reply on June 18, 2015.  (ECF Nos. 36, 37.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

Because Defendants move under Rules 12(b)(1) and 12(b)(6), the Court will briefly discuss the legal standards that pertain to each rule.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  A facial attack questions the sufficiency of the complaint as to its subject matter jurisdiction allegations.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  In reviewing a facial attack, courts accept all well-pled allegations as true.  *Id.*  A factual attack, on the other hand, goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based.  *Id*. at 1003.  A factual attack does not permit the court to presume the complaint's factual allegations are true, although the court does have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id*.  In such circumstances, the court's reference to evidence beyond the pleadings will not convert the motion to one under Rules 56 or 12(b)(6), unless the jurisdictional question is intertwined with the merits of the case.  *Id*. "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Id*.

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard

requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The following facts and allegations are gathered from Plaintiff's Amended Complaint ("the Complaint"). (ECF No. 30.) Plaintiff J.D. is a minor child who was formerly enrolled at Corwin. (*Id*. at 3.) J.D. alleges she suffers from "hypoglycemia, asthma and progressive muscular/skeletal weakness," for which she received a Section 504 accommodation ("504 Plan"). (*Id*.) Per her 504 Plan, Plaintiff was not to be forced to participate in any school activity that might "compromise her physical condition." (*Id*. at 4.) On February 27, 2014, Plaintiff attended her gym class at Corwin, where she "was instructed to participate in a human 'pyramid.' This is an exercise that places students on top of each other in a standing or 'all fours' position and they build the human 'pyramid.'" (*Id*.) Plaintiff did so, and was standing on the backs of two students when she became dizzy and fell. (*Id*.) Because there was no mat to cushion her fall, Plaintiff was injured. (*Id*.)

While at Corwin, Plaintiff alleges that other students verbally and physically harassed her over the span of several months.  (*Id*. at 2-7.)  Plaintiff alleges that she first complained about the bullying in October 2013.  (*Id*. at 3.)  Specifically, Plaintiff complained that a student had been "tasering" her in the sides and stomach repeatedly.  (*Id*.)  The Complaint states, "Tasering is where a person stiffens their four fingers, tucks in their thumb and stabs their fingers into another person's side or stomach as hard as one can."  (*Id*.)  This student also stole Plaintiff's snacks that she used to combat her low blood sugar.  (*Id*.)  When Plaintiff complained, a school official told Plaintiff that she would "take care of the situation" and "bring the student in responsible for the bullying."  (*Id*.)  Plaintiff alleges that nothing was done about these incidents.  (*Id*.)

On April 8, 2014, "the bullying directed at [Plaintiff] escalated to physical violence" when a group of students "punched, slapped and placed [Plaintiff] in a headlock, leaving bruises on her neck, arms, leg, and stomach"; again, the bullying was reported and school officials stated they would "take care of the situation."  (*Id*. at 4-5.)  The bullying continued throughout April, and included threats and a suggestion to Plaintiff that she kill herself, which Plaintiff reported to the same school officials on April 20, 2014.  (*Id*. at 5-6.)  Plaintiff was told by Corwin's principal, Ms. Shue, that they would look into the allegations; Ms. Shue recommended that Plaintiff be taken out of all her classes and moved to a different student group, which Plaintiff and her parents declined to do.  (*Id*. at 7.)  Plaintiff alleges no further acts of bullying after the April 20, 2014 meeting with Corwin officials.  (*Id*.)

4

Plaintiff further alleges that she requires snacks on a regular basis throughout the school day due to her hypoglycemia.  (*Id*. at 10.)  One day, Plaintiff forgot to bring her snacks to school, and Plaintiff's sister later dropped them off.  (*Id*. at 10-11.)  After the snacks were dropped off, the school took almost three hours to bring them to Plaintiff, which she claims was discriminatory and caused her "weakness, dizziness and nausea."  (*Id*. at 11.)  Finally, Plaintiff alleges that she underwent leg surgery (apparently unrelated to this lawsuit) in July 2013 and provided Corwin with a letter from the Colorado Children's Hospital that stated Plaintiff should be given two sets of books, one for home and one for school.  (*Id*.)  Defendants never complied with this request. (*Id*.)

Due in large part to the bullying that Corwin allegedly never addressed, Plaintiff withdrew from the school on April 25, 2014.  (*Id*. at 7.)  Plaintiff was subsequently diagnosed with depresssion and referred to a psychologist, who treated her for post-traumatic stress disorder.  (*Id*.)  Plaintiff now attends a different school that is further away from her home than Corwin.  (*Id*. at 8.)  "This is a hardship to the [Plaintiff and her parents] and they are concerned about the distance in case of any emergencies."  (*Id*.)

## III. ANALYSIS

### A.   Converting the Motion

The Court must first determine whether it must convert Defendants' Motion, insofar as it argues for dismissal under Rule 12(b)(1), into a motion for relief under Rule 56 or Rule 12(b)(6).  Defendants' Motion is properly characterized as a facial attack

because it appears to argue that, even accepting Plaintiff's version of events as true, her claims fail for lack of subject matter jurisdiction.  (ECF No. 33.)  However, Defendants do attach the affidavit of Jerri Garcia, Plaintiff's former physical education teacher, to their Reply brief; the affidavit challenges Plaintiff's version of events with respect to the human pyramid.  (ECF Nos. 37, 37-1.)  Garcia claims she never instructed Plaintiff or any other students to participate in the human pyramid.  (ECF No. 37-1 at 2.)  In fact, Garcia claims that she expressly prohibited the students from doing so.  (*Id*.)

Garcia's affidavit could convert the Motion into a factual attack if the Court considered it.  But Defendants did not include the affidavit, or any argument challenging Plaintiff's claim that she was forced to participate in the human pyramid, in their Motion. (ECF No. 33.)  Because Plaintiff was unable in her Response brief to address an argument not raised in Defendants' Motion, and does not have a further opportunity to respond to Defendants' Reply, *see* D.C.COLO.LCivR 7.1(d), the Court finds that Defendants have waived this argument, at least for purposes of the instant Motion.  *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (arguments raised for the first time in a reply brief generally are deemed waived).  The Court therefore reviews Defendants' 12(b)(1) Motion under the same standard applicable to dismissals under 12(b)(6).  *Dry v. United States*, 235 F.3d 1249, 1253 (10th Cir. 2000).

**B.    Plaintiff's Claims**

Defendants move to dismiss Plaintiff's Complaint in its entirety.  The Court discusses each of Plaintiff's claims in turn.

1.   <u>Negligence Claim</u>

Plaintiff alleges that Defendants were negligent when they allowed her to

participate in the human pyramid during gym class.  (ECF No. 30 at 9-10.)  However,

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's state

law tort claim due to the application of the Colorado Governmental Immunity Act, Colo.

Rev. Stat. §§ 24-10-101 *et seq*. ("CGIA").  (ECF No. 33 at 3.)  Plaintiff responds that

Defendants have waived any immunity under the CGIA.  (ECF No. 36 at 3.)

Enacted in 1971 in response to court decisions abrogating common law

sovereign immunity, the CGIA codifies governmental immunity from suit in tort cases

brought against Colorado public entities and employees.  Colo. Rev. Stat.

§ 24-10-103(5).  However, the CGIA also contains exceptions, waiving immunity in

certain cases.  *See* Colo. Rev. Stat. § 24-10-106(1).  The question of whether

governmental immunity under the CGIA has been waived is one of subject matter

jurisdiction, and the Court therefore properly decides this issue under Rule 12(b)(1).

*See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993).

Plaintiff acknowledges that her tort claim is subject to the CGIA, and that

Defendants are "public entities" within the meaning of the statute.  Colo. Rev. Stat.

§§ 24-10-105, 24-10-103(5).  (ECF No. 36 at 3.)  However, Plaintiff argues that her

claims fall under an exception to the CGIA at § 24-10-106(1)(c), wherein "[s]overeign

immunity is waived by a public entity in an action for injuries resulting from . . . [a]

dangerous condition of any public building."[1]  (*Id*. at 3.)  The CGIA defines "dangerous

---

[1]  While Plaintiff's Complaint also asserts waiver of immunity due to a "dangerous
condition of any . . . recreation area maintained by a public entity," Plaintiff does not defend this

condition" as follows:

> [1] either a physical condition of a facility or the use thereof [2] that constitutes an unreasonable risk to the health or safety of the public, [3] which is known to exist or which in the exercise of reasonable care should have been known to exist and [4] which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility. . . . A dangerous condition shall not exist solely because the design of any facility is inadequate.

Colo. Rev. Stat. § 24-10-103(1.3).  Defendants contend that Plaintiff's claims do not fall under the CGIA definition of a "dangerous condition of any public building," and that they are therefore immune from suit.  (ECF No. 33 at 4.)

The Colorado Supreme Court has clarified that the phrase "'or the use thereof' means the use of a physical condition of a facility," and that "thereof" refers to the facility's physical condition, not to the facility itself.  *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo. 1992), overruled on other grounds by *Bertrand v. Bd. of Cnty. Comm'rs of Park Cnty.*, 872 P.2d 223 (Colo. 1994).  That is, the "dangerous condition of any public building" exception does not include all injuries resulting from uses of and activities in a public building, but rather covers only "an injury arising from the state of the building itself or the use of a state of the building."  *Id*.

Relying on this provision of the statute, Plaintiff analogizes this case to *Hendricks By & Through Martens v. Weld County School District*, 895 P.2d 1120 (Colo. App. 1995).  In *Hendricks*, the plaintiff was an elementary school student who fractured his

---

theory in her response to Defendants' Motion.  (*Compare* ECF No. 30 at 9, *with* ECF No. 36 at 3.)  Plaintiff has therefore conceded that § 24-10-106(1)(e) is inapplicable to this case.

leg when he slid into an unpadded wall while playing a game during gym class. *Id*. at 1122. The object of the game was to run from one end of the gym to the other without getting hit by the balls being thrown at the runners. *Id*. Each end of the gym had a designated four-foot "safe area." *Id*. The plaintiff ran toward the safe area, and slid into the wall to avoid being hit by one of the balls, thus injuring his leg. *Id*.

The Colorado Court of Appeals held that the plaintiff's negligence suit was not barred by the CGIA under the "dangerous condition" exception to immunity. *Id*. The court held that the plaintiff did not allege that the building's design was inadequate, or that his injury was caused by the intervening acts of a third party, neither of which would suffice to overcome immunity. *Id*. at 1123. Rather, the plaintiff argued "that the physical condition of the building, *i.e.*, the unpadded wall, combined with its use, constitute[d] a dangerous condition of a public facility." *Id*. The court went on to note that, "[u]nlike previous cases which have involved injuries arising from the acts of an intervening third party, arising solely from the activities conducted within the public building, or arising solely because of inadequate design, Hendricks' injury resulted from a dangerous physical condition of the building itself." *Id*. Thus, the *Hendricks* defendants were denied immunity under the CGIA. *Id*.

Plaintiff argues that "it is unclear where Plaintiff's case differs from the facts of *Hendrick*[*s*], except one had an unpadded wall and the other a floor." (ECF No. 36 at 4.) After a careful review of the relevant case law, however, the Court is required to conclude that the decision in *Hendricks* is an anomaly. It is difficult to reconcile the holding in *Hendricks* with the principle that "[i]mmunity is not waived for injuries that are

9

sustained merely as a result of participating in an activity within a public building."

*Douglas v. City & Cnty. of Denver*, 203 P.3d 615, 619 (Colo. App. 2008); *see also*

*Sanchez By & Through DiFerdinando v. Sch. Dist*. *9-R*, 902 P.2d 450, 454 (Colo. App.

1995) (declining to follow *Hendricks* where disabled student engaged in parallel bars

gymnastics exercise during physical education class and fell, injuring her knee).  More

importantly, *Hendricks* does not discuss how the plaintiff's injury from the unpadded

wall was "proximately caused by the negligent act or omission of the public entity or

public employee in constructing or maintaining such facility."  Colo. Rev. Stat.

§ 24-10-103(1.3).

Indeed, Plaintiff has failed to allege any facts to support a finding that her injury

was caused by, or associated with, the construction or maintenance of the gym.  "A

dangerous condition shall not exist solely because the design of any facility is

inadequate."  *Id*.  The CGIA defines "maintenance" as a the act or omission of a public

entity or public employee "in keeping a facility in the same general state of repair or

efficiency as initially constructed or in preserving a facility from decline or failure.

'Maintenance' does not include any duty to upgrade, modernize, modify, or improve the

design or construction of a facility."  *Id.* at § 24-10-103(2.5); *Padilla ex rel. Padilla v.*

*Sch. Dist. No. 1*, 25 P.3d 1176, 1180-81 (Colo. 2001) ("the condition must be

associated with construction or maintenance, not solely design").

For example, in *Padilla*, a teacher's use of a storage closet in a school as a

"time-out" area was found not to fall under the immunity exception for a dangerous

condition of a public building.  25 P.3d at 1181.  The plaintiff was a disabled child who

had been put in "time-out" in the storage closet, placed in a stroller propped against the open door. *Id.* at 1178. Once left alone, she became agitated, the stroller fell backward, and the plaintiff hit her head on the tile floor. *Id.* In response to the plaintiff's waiver argument, the Colorado Supreme Court held:

> While Padilla may have sufficiently alleged an act of negligence, leaving a disabled and distraught child out of sight and reach in an unstable stroller, we conclude that she did not demonstrate a sufficient connection between use of the state of the building and a construction or maintenance activity or omission for which the School District is responsible. Padilla's theory of the case only amounts to a claim that the School District should have upgraded the design of the closet if it wished to use it as a "time out" room for students exhibiting disruptive behavior. This is inadequate to effectuate the waiver. . . . Padilla merely alleged that the government used the facility in an unsafe manner, thus only alleging that the government was negligent in its use of the facility. Therefore, Padilla's complaint lacked sufficient jurisdictional facts to support an immunity waiver under the provision of the CGIA waiving immunity for a dangerous condition of a public facility.

*Id.* at 1183.

The Court finds *Padilla* persuasive. Even accepting Plaintiff's contention that performing a human pyramid on an unpadded floor is a dangerous use of a physical condition of the facility, Plaintiff fails to show how the unpadded floor or the human pyramid activity are in any way connected to the maintenance or construction of the facility. Rather, Plaintiff makes the same argument the Colorado Supreme Court rejected in *Padilla*: Defendants used the gym in an unsafe manner, and should have upgraded the facility before forcing students to participate in the human pyramid. This argument is insufficient to support a waiver under the CGIA, and accordingly Plaintiff's state law tort claim is dismissed for lack of jurisdiction.

11

2.      Failure to Exhaust ADA, § 504, and § 1983 Claims

Defendants further move to dismiss Plaintiff's claims under the ADA, § 504, and § 1983.[2]  Defendants argue that before Plaintiff can bring such claims, she must first demonstrate that she has exhausted her administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*  (ECF No. 33 at 6.)

The IDEA "ensure[s] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To achieve this goal, the state must create an individualized education plan ("IEP") for each disabled child.  *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1268 (10th Cir. 2007) (citing 20 U.S.C. § 1412(a)(4)).  When parents believe their child is not being provided "a free appropriate public education," they are entitled to an administrative due process hearing.  *Id*. at 1269 (citing 20 U.S.C. § 1415(f)).

The IDEA is clear that it should not be construed to "restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . , title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities. . . ."  20 U.S.C. § 1415(l).  However, before aggrieved parents may sue under any of the above statutes "seeking

---

[2]  The Court rejects Plaintiff's argument that Defendants have only moved to dismiss her § 504 claim for failure to exhaust, but do not seek dismissal of her claims under the ADA or § 1983.  Defendant explicitly titles this portion of the Motion as follows:  "Plaintiff's Second, Third and Fourth Claims for Relief Should Be Dismissed for Failure to Exhaust Administrative Remedies."  (ECF No. 33 at 6.)  Defendants accordingly argue that the exhaustion analysis applies to each of Plaintiff's claims under the ADA, § 1983, and § 504.

relief that is also available under [the IDEA]," they must administratively exhaust their remedies under the IDEA "to the same extent as would be required had the action been brought under this subchapter." *Id*.

Thus, the failure to exhaust the IDEA's administrative remedies is excused if the relief the plaintiff seeks is not "available" under the statute.  Exhaustion is also not required if pursuing administrative remedies would be futile, or if they would otherwise "fail to provide relief."  *Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996).  For example, the IDEA offers no relief for "pure discrimination claims."  *Ellenberg*, 478 F.3d at 1280-81 (exhaustion excused where plaintiffs challenged school's discriminatory admissions practice); *see also Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000) (exhaustion excused where plaintiffs sought damages solely to redress student's fractured skull and other physical injuries sustained due to school district's ADA violations).

Relief under the IDEA is deemed available whenever the plaintiff could obtain "relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers or specifically seeks."  *Padilla*, 233 F.3d at 1274 (citation omitted).  The inquiry focuses on the "source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself."  *Id*.  "In essence, the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to *any degree* by the IDEA's administrative procedures and remedies."  *Id*. (emphasis added).  If it is unclear whether the IDEA has the ability to remedy a particular injury, exhaustion is required to "give educational agencies an initial

opportunity to ascertain and alleviate the alleged problem." *Id*. Thus, if the plaintiff brings a claim that is "educational in nature" that challenges the school district's provision of educational services, "the claim is 'presumptively redressable' through the IDEA's administrative procedures." *Ellenberg*, 478 F.3d at 1280. These principles remain true regardless of the statutes the plaintiff cites as the basis for her lawsuit. *Id*.

Here, although Plaintiff brings ADA, § 504, and § 1983 claims, her lawsuit may still fall under the IDEA. (*See* ECF No. 30.) Plaintiff's Complaint discusses her 504 Plan that was designed to accommodate her disabilities but which Defendants neglected to follow, and Defendants' failure to address Plaintiff's complaints of bullying. (*Id*.) According to Plaintiff, "Defendants consciously disregarded [Plantiff's] rights under her 504 plan and discriminated against [her] by allowing bullying and a dangerous learning environment." (*Id*. at 11.) The Court will discuss each of Defendants' alleged violations below. Before doing so, the Court disposes of Plaintiff's two preliminary arguments why exhaustion is not required.

Plaintiff first argues that because she only seeks money damages, rather than any prospective educational benefits, the relief she seeks is not "available under" the IDEA. (ECF No. 36 at 6.) To the contrary, "the IDEA's exhaustion requirement will not be excused simply because a plaintiff requests damages, which are ordinarily unavailable in administrative hearings held pursuant to the statute, if [the] alleged injuries could be redressed under the IDEA." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066-67 (10th Cir. 2002) (citations omitted); *see also A.F. ex rel Christine B. v. Espanola Pub. Sch*., 2015 WL 5333491, at *2 (10th Cir. Sept. 15, 2015) ("But some

14

time ago this court held that the 'dispositive question' when assessing the

. . . exhaustion requirement isn't whether the plaintiff seeks damages or some other

particular remedy, but 'whether the plaintiff has alleged injuries that could be redressed

to any degree by the IDEA's administrative procedures and remedies.'") (emphasis in

original) (citation omitted).  The Court accordingly rejects this argument.

Second, Plaintiff argues that because she is no longer enrolled at Corwin there

is no way that the IDEA can provide her any relief, particularly because she is at a new

school that meets her educational needs.  (ECF No. 36 at 6.)  The Tenth Circuit has

rejected "the argument that exhaustion will be excused because relief is no longer

'available' at the time the plaintiff seeks to file a civil suit if relief was available at the

time the alleged injuries occurred."  *Cudjoe*, 297 F.3d at 1067; *see also Polera v. Bd. of

Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir. 2002) ("Finally,

we reiterate our holding that disabled-student plaintiffs . . . should not be permitted to

'sit on' live claims and spurn the administrative process that could provide the

educational services they seek, then later sue for damages.").  As the Eleventh Circuit

has held:

> If parents can bypass the exhaustion requirement of the
> IDEA by merely moving their child out of the defendant
> school district, the whole administrative scheme established
> by the IDEA would be rendered nugatory.  Permitting
> parents to avoid the requirements of the IDEA through such
> a "back door" would not be consistent with the legislative
> intent of the IDEA.

*N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996); *see also*

*Doe By & Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) ("[T]he parents'

unilateral act of removing their child from a public school does not waive the right to

15

seek reimbursement under the [IDEA], [and] it does not mean that the procedures in the [IDEA] may be by-passed.").  The Court therefore cannot permit to Plaintiff to avoid the IDEA's administrative requirements simply because she is no longer at Corwin.

> i.      *Bullying*

Plaintiff alleges that the bullying began in October 2013 and continued until she withdrew from Corwin on April 25, 2014.  (ECF No. 30 at 1-7.)  For exhaustion to be required, the Court must be persuaded that relief from the bullying was available under the IDEA, and that Plaintiff's injuries, in this context, were "educational in nature." *Ellenberg*, 478 F.3d at 1280.  The IDEA provides relief "for claims whose genesis and manifestation . . . are educational."  *Cudjoe*, 297 F.3d at 1067 (internal quotation marks and citation omitted).  Thus, for exhaustion to apply, the alleged acts must have "both have an educational source and an adverse educational consequence."  *Id.*

The adverse educational consequences of bullying are obvious here, as it eventually forced Plaintiff to change schools.  However, no educational source of the harm exists, and relief for such harm would not be available under the IDEA.  In *Muskrat v. Deer Creek Public Schools*, 715 F.3d 775, 785 (10th Cir. 2013), the plaintiff alleged three instances of physical abuse at the hands of two school employees.  The Court held that it would make little sense to require parents to raise such claims through the IDEA administrative process.  *Id*.  "Even though random violence may occur in the course of a child's education," the court held, "we do not believe the child's parent must request a 'no random violence' clause in the IEP."  *Id*.  Here, Plaintiff was not required to request a "no bullying" clause in her 504 Plan or a separate IEP.  This is, moreover,

16

not a case where the verbal and physical harassment suffered by Plaintiff was the result of Defendants' disciplinary measures gone awry, *Hayes Through Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989), or where Defendants' employees encouraged harassment by others, *Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 990 (7th Cir. 1996). The "genesis and manifestation" of the harm is therefore not educational. The Court thus finds that exhaustion was not required in this case as to Plaintiff's bullying claim.

ii. *The Human Pyramid and the Snacks*

Plaintiff alleges that Defendants violated her 504 Plan when they forced her to participate in the human pyramid, and failed to promptly provide her the snacks necessary to combat her low blood sugar. (ECF No. 30 at 11.) Applying the analysis discussed above, the Court finds that these claims also do not fail for lack of exhaustion, despite their stronger educational nexus.

Rather, this case, at least with regard to these two incidents, is similar to *Padilla*, in which a student was restrained in a stroller and placed in a closet without supervision, contrary to her IEP. 233 F.3d at 1271. While in the closet, the plaintiff fell and hit her head on the floor, causing serious injuries including a skull fracture. *Id*. In denying the defendants' motion to dismiss for failure to exhaust, the court held:

> So far as we can tell in the instant case, Plaintiff seeks damages solely to redress the fractured skull and other physical injuries she suffered allegedly as a result of the school district's and board of education's purported ADA violations. Plaintiff makes no complaints regarding her current educational situation. . . . Under these narrow circumstances, we fail to see how the IDEA's administrative remedies, oriented as they are to providing prospective

17

> educational benefits, could possibly begin to assuage
> Plaintiff's severe physical, and completely non-educational,
> injuries.

*Id*. at 1274; *see also McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 565

(7th Cir. 2004).  Plaintiff's claims fall in the narrow exception to exhaustion carved out

by *Padilla* because the nature of her injuries is primarily physical.  Plaintiff alleges that

her fall from the human pyramid required surgery on her elbow and caused "permanent

damage to her ulnar nerve."[3]  (ECF No. 30 at 8.)  Likewise, Defendants' failure to

provide Plaintiff her snacks in a timely fashion resulted in her "weakness, dizziness and

nausea."  (*Id*. at 11.)  No change to Plaintiff's 504 Plan or development of an IEP could

remedy this harm, and, in fact, Plaintiff's 504 Plan already prohibited these actions.

Plaintiff also makes no argument that her subsequent educational situation suffered as

a result of these incidents, other than her new school being too far away.  (*Id*. at 8.)

The IDEA's "prospective educational benefits" will therefore not benefit Plaintiff, and

she was not required to exhaust her administrative remedies in this regard, as any

exhaustion would have proved futile.

### iii.    *The Books*

Plaintiff alleges that she had leg surgery (apparently unrelated to this action)

in July 2013.  (ECF No. 30 at 11.)  During a post-surgery visit to the Colorado Children's

Hospital, Plaintiff was given a letter stating she should have two sets of books—one for

---

[3]  The Court agrees with Defendants that it is somewhat unclear from the face of the Complaint that Plaintiff is connecting her elbow surgery to the human pyramid.  (ECF No. 33 at 8.)  Plaintiff, however, argues in her Response that her "elbow surgery was a direct result of . . . her fall from the pyramid . . ."  (ECF No. 36 at 7.)  The Court must, at this juncture, view the facts in the light most favorable to Plaintiff, and therefore accepts Plaintiff's reading of the Complaint.

home and one for school.  (*Id*.)  Defendants never complied with this request.  (*Id*.)

This claim required exhaustion.  The failure to provide school books has both a clear educational source and an adverse educational impact.  *Cudjoe*, 297 F.3d at 1067.  Thus, resort to the IDEA's administrative remedies would not have proved futile in this case because it would have allowed the school to remedy the situation by simply providing Plaintiff another set of books.  *Cudjoe*, 297 F.3d at 1068 (holding that school district's provision of teaching materials in a tardy fashion had "an educational source and educational consequences.").  Any claims by Plaintiff related to Defendants' failure to provide two sets of books are therefore dismissed for lack of jurisdiction.

3.    Rule 12(b)(6) Dismissal of ADA and § 504 Claims

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's ADA and § 504 claims for failure to state a claim on which relief can be granted.  (ECF No. 33 at 8.)  Defendants argue that Plaintiff cannot establish that she was discriminated against based on her disability.  (ECF No. 33 at 9.)

When evaluating a discrimination claim under both § 504 and Title II of the ADA, "[b]ecause these provisions involve the same substantive standards, [courts] analyze them together."  *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citing *Urban*, 89 F.3d at 728 ("we analyze [plaintiff's] ADA claim by reference to [S]ection 504's standards").  Both statutes state that no individual with a disability shall, "by reason of" such disability, be subjected to discrimination.  29 U.S.C. § 794; 42 U.S.C. § 12132.  "A prima facie case under [Section] 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4)

19

the program discriminates against plaintiff."[4]  *Hollonbeck v. U.S. Olympic Comm.*, 513

F.3d 1191, 1194 (10th Cir. 2008); *see Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102

(10th Cir. 1999) ("Because the language of disability used in the ADA mirrors that in the

Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when

faced with an ADA challenge.") (citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)).

Therefore, the Court applies the Section 504 analysis for both claims.  *See Hollonbeck*,

513 F.3d at 1194.

To state a claim for relief, Plaintiff must show intentional discrimination by

Defendants.  However, intentional discrimination does not require proof of "personal

animosity or ill will."  *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th

Cir.1999).  Instead, "intentional discrimination can be inferred from a defendant's

deliberate indifference to the strong likelihood that pursuit of its questioned policies will

likely result in a violation of federally protected rights."  *Id*. at 1153; *see Alexander v.

Choate*, 469 U.S. 287, 296 (1985) ("Federal agencies and commentators on the plight

of the handicapped similarly have found that discrimination against the handicapped is

primarily the result of apathetic attitudes rather than affirmative animus.").  Put another

way, "[t]he test for deliberate indifference in the context of intentional discrimination

comprises two prongs:  (1) knowledge that a harm to a federally protected right is

substantially likely, . . . and (2) a failure to act upon that . . . likelihood."  *Barber ex rel.

Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (citation

omitted).  "[F]ailure to act is a result of conduct that is more than negligent, and involves

---

[4]  Defendants make no argument regarding the first, second, or third elements.  (ECF No. 33.)

an element of deliberateness." *Id.* (citation omitted).

The Court begins with the bullying claims. The Complaint contains numerous allegations that Plaintiff was bullied at Corwin over a lengthy period of time, which Defendants did nothing to stop. (ECF No. 30.) These allegations show that Plaintiff suffered discrimination. But the statutes at issue require more: "Under either the ADA or the Rehabilitation Act, [Plaintiff] is obligated to show that [s]he was otherwise qualified for the benefits [s]he sought and that [s]he was denied those *solely by reason of disability*." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (internal quotation marks omitted) (emphasis added). Plaintiff's Complaint fails to allege, or give rise to any inference, that her bullying allegations are linked, even in part, to her claimed disabilities. Any claims under the ADA and § 504 must fail without this necessary factual basis. *See Sutherlin v. Indep. Sch. Dist. No. 40*, 960 F. Supp. 2d 1254, 1267 (N.D. Okla. 2013).

The Court reaches the same conclusion with respect to Plaintiff's remaining claims involving the human pyramid and the snacks. Plaintiff alleges that, "per her Section 504 [Plan], [she] was not to be forced to participate in any activity that would compromise her physical condition," and that Defendants violated the 504 Plan when Plaintiff was forced to participate in the human pyramid. (ECF No. 30 at 4-5.) Plaintiff further alleges that her 504 Plan addressed her hypoglycemia, and that she required snacks during the school day to combat her low blood sugar. (*Id.* at 10-11.) Thus, according to the Complaint, Defendants discriminated against Plaintiff when they failed to ensure that she received her medically necessary snacks when needed. (*Id.* at 11.)

These allegations, viewed in the light most favorable to Plaintiff, do not support a plausible claim of intentional discrimination against Defendants.  The Court accepts that Defendants, and the individual Corwin employees involved, knew Plaintiff had a 504 Plan that limited her physical activity and covered her hypoglycemia.  But it does not follow that they knew it was "substantially likely" that Plaintiff's federally protected rights as a disabled student would be violated if she participated in a risky physical activity, or her snacks were delayed for three hours on a single occasion.  This conduct simply does not suggest "deliberate indifference to the strong likelihood" that violation of Plaintiff's rights would occur.  *Powers*, 184 F.3d at 1153.  These claims must therefore be dismissed pursuant to Rule 12(b)(6).

However, the Court cannot determine at this time whether these allegations, in the aggregate or separately, could support a plausible claim for relief if given greater factual context and support.  It is unclear whether Plaintiff's failure to link her bullying claims to her disability was a drafting error, or indicative of a lack of evidence; it is further unclear whether Plaintiff would be able to bolster her allegations related to the human pyramid and the snacks with more specific references to her 504 Plan, what exactly it prohibited, and what the offending employees knew at the time of the alleged harm.  Thus, because the Court cannot determine whether amendment of the Complaint would be futile, dismissal of these claims shall be without prejudice, and Plaintiff will be given leave to amend her Complaint with regard to these allegations.

4.    Rule 12(b)(6) Dismissal of the § 1983 Claim

Defendants argue that Plaintiff's § 1983 substantive due process claim should also be dismissed under Rule 12(b)(6).  (ECF No. 33 at 12.)

It is important to first note that Plaintiff's characterization of her § 1983 claim in her Response brief greatly differs from what she has actually pled in the Complaint. (*Compare* ECF No. 30 at 13-17, *with* ECF No. 36 at 12-13.)  The Complaint alleges that "John Doe" (Plaintiff's unnamed physical education teacher) violated Plaintiff's substantive due process right to bodily security when he forced Plaintiff to participate in the human pyramid, as did Defendants when they failed to adequately train and supervise John Doe.  (ECF No. 30 at 13-15.)  However, in her Response brief, Plaintiff attempts to establish a substantive due process violation through allegations of "pervasive bullying, consistent violation of Plaintiff's 504 plan and [Defendants'] policy" of ignoring disciplinary issues among the students at Corwin.  (ECF No. 36 at 13.)  The Court will not allow Plaintiff to expand the allegations in her Complaint through argument of counsel in a Response brief.  *See Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may *only* consider facts alleged within the complaint." (emphasis added)).  Thus, because Plaintiff's Complaint only discusses the human pyramid, the Court will consider that single event, and no others, in its discussion of Plaintiff's § 1983 claim.

A substantive due process claim is "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution."  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998).  The concept of substantive due process is not fixed or final, *Rochin v. California*, 342 U.S. 165, 170 (1952), but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.  *See Albright v. Oliver*, 510 U.S. 266 (1994).  Such claims arise "in

the narrowest of circumstances." *Becker v. Kroll,* 494 F.3d 904, 922 (10th Cir. 2007); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").

The standard for judging a substantive due process claim based on discrete actions (as opposed to legislation) is whether the challenged government action would "shock the conscience of federal judges." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* Therefore, "[a] substantive due process violation must be something more than an ordinary tort to be actionable under § 1983." *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996).

Plaintiff cannot establish a substantive due process violation based on the human pyramid allegations.[5] Plaintiff makes no argument that Defendants' conduct shocked the conscience, or that such a standard does not apply in this case. (ECF No. 36 at 12.) Regardless, the Court finds that the act of requiring Plaintiff to participate in

---

[5] The Court notes that it does not appear that Defendants' Motion is made on behalf of "John Doe." (*See* ECF No. 33 at 1.) However, the substantive due process analysis with respect to John Doe is critical to the remainder of the Court's § 1983 analysis as to Defendants.

a human pyramid one time is not conscience-shocking behavior, and a claim of mere negligence will not carry the day.  "The universe of circumstances that have been found sufficient to meet this test is limited indeed."  *Perry v. Taser Int'l Inc*., 2008 WL 961559, at *2 (D. Colo. Apr. 8, 2008); *see Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (no substantive due process violation where teacher ordered a mildly to moderately intellectually disabled ten-year-old boy to clean out the toilet with his bare hands); *Abeyta*, 77 F.3d at 1257 (not conscience-shocking for a teacher to call a twelve-year-old girl a prostitute in front of the class repeatedly over the course of several weeks and allow other students to do the same).  The Court accordingly finds that Plaintiff has not met her heavy burden of showing how her forced participation in the human pyramid rose to the level of a constitutional tort.[6]  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." (citation and internal quotation marks omitted)).

However, Plaintiff's § 1983 claim not only alleges a substantive due process violation against John Doe, but also seeks to impose liability on Defendants under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Liability under § 1983 cannot be predicated on a theory of *respondeat superior*.  *Id*. at 694.  The *Monell* Court "expressly held that municipal defendants—public school districts and school boards

---

[6]  To the extent that Plaintiff's Complaint suggests that John Doe's actions amounted to "punishment" (ECF No. 30 at 16), Plaintiff does not even come close to alleging conduct that was "so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."  *Muskrat*, 715 F.3d at 787.

included—can't be held liable under 42 U.S.C. § 1983 solely because they employ a person who violated the plaintiff's constitutional rights." *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 794 (10th Cir. 2014); *see also Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir. 1990) (applying *Monell* to school board).

Instead, it must be shown that the employee's unconstitutional actions were representative of the municipality's "official policy or custom . . . or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons*, 206 F.3d at 1029.  Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996).  The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Even assuming there is an underlying constitutional injury here (which the Court has found there is not), Defendants argue, and the Court agrees, that Plaintiff's Response brief fails to address the alleged policies referred to in the Complaint, or tie the application of those policies to her injuries.  (ECF No. 37 at 9.)  Plaintiff's Response brief focuses on Defendants' alleged practice of turning a blind eye to pervasive bullying, consistently violating Plaintiff's 504 Plan, and not reporting, or ignoring, disciplinary issues among Corwin students.  (ECF No. 36 at 12-13.)  The majority of

these allegations are not before the Court because Plaintiff has not included them in the § 1983 claim of the Complaint.  (ECF No. 30 at 14-17.)  Moreover, while the human pyramid incident appears to fall somewhere under Plaintiff's allegation that Defendants consistently ignored her 504 Plan, Plaintiff does little else to defend this theory of liability—the sole theory on which her § 1983 claim is based.  (*Id.*)

Nevertheless, the Court will assume for purposes of this Order that Plaintiff properly included all of the above allegations in the § 1983 claim of her Complaint.  The Court further assumes that Defendants' actions displayed a policy of deliberate indifference that was the moving force behind the conduct at issue, and the harm suffered by Plaintiff.  Whether that conduct at issue shocks the conscience is another matter.

Here, Plaintiff was not given her snacks in a timely fashion one time, which, Plaintiff alleges, caused her  "weakness, dizziness and nausea."  (ECF No. 30 at 11.)  Plaintiff was also injured during the human pyramid activity.  (*Id.*)  These events do not shock the conscience, even assuming the state actors acted intentionally.  *See, e.g.*, *Williams v. Berney*, 2006 WL 753208, at *5 (D. Colo. Mar. 20, 2006), *aff'd in part*, 519 F.3d 1216 (10th Cir. 2008) (no substantive due process violation where state employee severely beat plaintiff without provocation, causing him severe injuries and later a stroke).

The Court reaches the same conclusion when these allegations are considered together with Plaintiff's repeated bullying.  While in hindsight Corwin's response (or lack thereof) to the bullying did little to protect Plaintiff from the harm that befell her, the circumstances are not conscience-shocking so as to rise to the level of a constitutional

27

violation.  Rather, these and Plaintiff's other allegations more properly sound in common law tort rather than substantive due process.  For example, in *Smith v. Guilford Board of Education*, 226 F. App'x 58, 62 (2d Cir. 2007), the Second Circuit found that the school board's "failure to respond to the harassing and bullying to which the plaintiff] was subjected . . . , while highly unfortunate, d[id] not rise to the level of" conduct that shocks the conscience.  The bullying directed at the plaintiff, who was "4'7" tall and weighed approximately 75 pounds," included:

> (1) pushing and shoving; (2) blocking [the plaintiff's] entrance into or out of classrooms, restraining and imprisoning him therein; (3) placing [the plaintiff] on students' shoulders and physically treating him "like a baby;" (4) teasing, harassing, bullying and tormenting [the plaintiff] on a daily basis; (5) forcing [the plaintiff] into a backpack, zipping the pack, then parading the backpack, with [the plaintiff] visible, through the halls of the school; (6) mocking [the plaintiff] with sexually suggestive comments; (7) on at least one occasion, picking him up against his will, cradling and treating him as if he were a baby; (8) grabbing, assaulting, restraining, imprisoning, and teasing him with disparaging or threatening comments.

*Smith v. Guilford Bd. of Educ.*, 2005 WL 3211449, at *1 (D. Conn. Nov. 30, 2005), *aff'd in part, vacated in part*, 226 F. App'x at 58; *see also Pollard v. Georgetown Sch. Dist.*, 2015 WL 5545061, at *2 (D. Mass. Sept. 17, 2015) (no substantive due process violation where plaintiff was "regularly emotionally, physically and verbally" abused by peers because he was Jewish and small in stature; students expressed desire to kill, stab, and beat plaintiff on social media; and made multiple comments about Jews being massacred and stating that the Holocaust was unsuccessful because plaintiff's family survived, all of which school district failed to investigate); *Sutherlin*, 960 F. Supp. 2d at

1262 (no substantive due process violation—merely "bad judgment and insensitivity"—where school district officials witnessed and ignored plaintiff being physically assaulted, called plaintiff names in front of students, and failed to investigate numerous incidents of bullying and harassment).  Plaintiff no doubt had a terrible experience at Corwin, and the bullying allegations in this case are very disturbing and troubling.  While this Court may very well have come to a different conclusion were it writing on a blank legal precedent slate, given the sky-high bar erected by decisions of our Circuit on what conduct rises to the level of a constitutional tort, the Court cannot on this record find that the school officials' actions in this case shock the conscience.

Therefore, the Corwin school officials' actions, accepted as true and taken cumulatively, do not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Tonkovich*, 159 F.3d at 528. This is fatal to Plaintiff's *Monell* claim (including any claim for failure to train and supervise), which must be based on an underlying constitutional violation by Defendants' representatives.  "It is important to distinguish between the standard for determining when a governmental entity will be liable under section 1983 for constitutional wrongs committed by its employees and the degree of fault, if any, which a plaintiff must show to make out an underlying claim of a constitutional violation." *Ware*, 902 F.2d at 820 n.2 (10th Cir. 1990) (citing *Canton*, 489 U.S. at 388 n.8); *see also Muskrat*, 715 F.3d at 788 ("The district court held that the school district could not be liable under *Monell* because the Muskrats had failed to show that any school district employee had committed a constitutional violation.  We have reached the same

conclusion and therefore affirm the district court on this issue."); *Perry*, 2008 WL 961559, at *3 ("[I]n the absence of an underlying constitutional violation, plaintiff cannot make out a claim against the city or Bennett for failure to adequately train Aurora police officers . . . ."). Thus, because Plaintiff can establish no underlying constitutional violation by any of Defendants' employees or representatives, her *Monell* claim must fail.

Finally, Plaintiff seeks to hold Defendants liable based on a "danger creation" theory, which also "must ultimately rest on the specifics of a substantive due process claim—*i.e.*, a claim predicated on reckless or intentionally injury-causing state action which 'shocks the conscience.'"[7] *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). To prevail on this theory, Plaintiff must show that the "charged state entity and the charged individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998). Thus, this doctrine "necessarily involves *affirmative conduct* on the part of the state in placing the plaintiff in danger." *Gray*, 672 F.3d at 920 (emphasis added).

---

[7] Plaintiff does not pursue a "special relationship" theory of liability which would not apply here in any event. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 917 n.4 (10th Cir. 2012) (noting that "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school"); *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) ("[D]efendants' alleged nonfeasance in the face of specific information which would mandate action does not invoke the protections of the Due Process Clause"); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 776 (S.D.N.Y. 2011) ("The consensus among the courts is that the 'special relationship' doctrine does not apply to the school setting.").

The Court has serious doubts that Plaintiff could ever state a plausible claim under the danger-creation theory.  Plaintiff's allegations revolve around Defendants' *inaction* in the face of danger (the affidavit of Mark Scarr aside, which the Court declines to consider here).  (ECF No. 38.)  But even if Plaintiff were able to adduce facts that Defendants engaged in at least some affirmative conduct that created the danger at issue, her allegations are not conscience-shocking as established above.

Therefore, because Plaintiff cannot establish an underlying constitutional violation by either John Doe personally, Defendants under *Monell*, or Defendants under the danger creation theory, her § 1983 claim fails.  Moreover, given the above discussion, the Court finds that any amendment of the Complaint would be futile because Plaintiff would not be able, under any recitation of the facts at issue, to establish her § 1983 claim.  *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").  Plaintiff's § 1983 claim must therefore be dismissed in its entirety and with prejudice.

### 5.   Corwin as Defendant and Lisa Dorsey as Plaintiff

Defendants argue that though Corwin is named as a Defendant, none of Plaintiff's claims are specifically pled against it, and Corwin is not a separately suable entity apart from the school district.  (ECF No. 33 at 14.)  Plaintiff did not respond to this argument in her Response Brief.  (ECF No. 36.)  Support exists for the proposition that Corwin may not be separately sued along with the school district.  For example, Colorado law specifically states that "[e]ach regularly organized school district . . . may . . . sue and be sued."  Colo. Rev. Stat. § 22-32-101; s*ee also Roe v. Karval Sch. Dist.*

*RE23*, 2013 WL 1858464, at *7 (D. Colo. May 2, 2013).  The Court accordingly finds

that Corwin is not a separately suable entity from Defendant Pueblo School District 60.

Defendants further argue that Lisa Dorsey should be dismissed as an

individually-named Plaintiff because the Complaint contains no allegations that she was

injured by any of Defendants' actions.  (ECF No. 33 at 2.)  Plaintiff does not respond to

this argument either.  (ECF No. 36.)  A review of the Complaint supports Defendants'

contention that the claims are only alleged on behalf of Ms. Dorsey's minor daughter,

J.D.  (ECF No. 30.)  The Court accordingly finds that Ms. Dorsey may proceed with this

lawsuit as parent and representative of J.D., but not individually.

6.    Attorneys' Fees

Defendants request attorneys' fees pursuant to Colorado Revised Statute

§ 13-17-201 in the event the Court grants the Motion.  (ECF No. 33 at 15.)  The Court's

Practice Standards state:

> All requests for the Court to take any action, make
> any type of ruling, or provide any type of relief must
> be contained in a **separate**, written motion.  A request
> of this nature contained within a brief, notice, status
> report or other written filing does not fulfill this
> Practice Standard.  This requirement applies to all
> civil and criminal actions. (emphasis in original)
> WJM Revised Practice Standard III.B; *see,*
> D.C.COLO.L.Civ.R. 7.1(d).

The Court thus declines to consider Defendants' request for attorneys' fees at this time,

and expresses no opinion on Defendants' entitlement to such fees.  Should Defendants

believe they are entitled to attorneys' fees in connection with this Motion, they may file a

separate Motion for Attorneys' Fees at a later date.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1)   Defendants' Motion to Dismiss (ECF No. 33) is GRANTED IN PART AND
     DENIED IN PART as described in detail above;

2)   Claim One (Negligence Resulting in Personal Injury) of Plaintiff's Amended
     Complaint (ECF No. 30) is DISMISSED WITHOUT PREJUDICE;

3)   Claim Two (Violation of Section 504 Rehabilitation Act of 1973) and Claim Three
     (Violation of the Americans with Disabilities Act of 1990) of Plaintiff's Amended
     Complaint are DISMISSED WITHOUT PREJUDICE;

4)   As described above, Plaintiff may, **on or before November 30, 2015**, further
     amend her Complaint: (a) to allege plausible, substantiated facts that would
     sufficiently support Claims Two and Three in a manner consistent with the
     analysis in this Order; and/or (b) assert a new related claim or claims, the
     addition of which would not be inconsistent with the analysis in this Order;

5)   Claim Four (Violation of 42 U.S.C. § 1983) of Plaintiff's Amended Complaint is
     DISMISSED WITH PREJUDICE;

6)   Defendant Corwin International Magnet School is DISMISSED as a Defendant
     herein;

7)   Plaintiff Lisa Dorsey is DISMISSED from this action insofar as she purports to
     seek individual relief; Ms. Dorsey will remain a party to this action as parent and
     representative of her minor child, Plaintiff J.D.  The Clerk shall accordingly
     update the case caption in this matter, as will the parties in all future filings;

8)      The stay previously imposed by United States Magistrate Judge Craig B. Shaffer

(ECF No. 26) is hereby LIFTED.   Pursuant to the Judge Shaffer's Order at ECF

No. 26, no later than October 29, 2015 the parties shall contact Judge Shaffer's

Chambers to schedule a Status Conference in this case.

Dated this 26th day of October, 2015.

BY THE COURT:

William J. Martinez
United States District Judge